IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

PATRICK B. WALLACE,                              )
                                                 )
      Petitioner,                          )
                                                 )
 v.                                              )     Case No. 15-3356
                                                 )
UNITED STATES OF AMERICA,                        )
                                                 )
      Respondent.                          )

## OPINION

RICHARD MILLS, United States District Judge:

We have, before the Court, Petitioner Patrick B. Wallace's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255.

## I.     INTRODUCTION

The Petitioner[1] filed a motion under 28 U.S.C. § 2255 that raised twelve separate grounds for relief. His memorandum in support of the motion is 103 pages, in addition to a number of attachments including affidavits. The Government filed an initial response and suggested that the Court appoint counsel and conduct an evidentiary hearing to allow the Petitioner to present any evidence in support of the motion.

---

[1] In the interest of consistency, the Court will refer to Patrick B. Wallace as "Petitioner" whether discussing this case or the underlying criminal case.

The Petitioner retained private counsel. At the evidentiary hearing, he declined to present any testimony from any of the persons who allegedly completed affidavits that were attached to his motion and presented only the testimony of his trial counsel, R. John Alvarez, and his own testimony.

Following the evidentiary hearing, the Petitioner fired his retained counsel and was granted leave by the Court to proceed *pro se*. He then filed a 30-page supplemental memorandum.

The twelve grounds asserted by the Petitioner in his initial motion include: (1) the denial of his motion for new trial mandates reversal and entitlement to a new trial; (2) counsel was ineffective for failing to hold the Government to its burden to make a reasonable effort to locate the confidential informant, thereby violating the Petitioner's right to present a complete defense; (3) counsel was ineffective for failing to request a material witness warrant to compel the confidential informant's attendance and testimony at trial; (4) counsel was ineffective for failing to present the testimony of three more witnesses in support of the Petitioner's theory of defense; (5) counsel was ineffective for failing to investigate and effectively cross examine and question witnesses presented by both the Government and the Petitioner in support of Petitioner's theory of defense; (6) counsel was ineffective for failing to raise Petitioner's claim under *Brady v. Maryland* on direct appeal; (7) counsel was ineffective for failing to file a motion under the Jencks Act at the

conclusion of the Government witness testimony; (8) counsel was ineffective for presenting inculpatory evidence against Petitioner without simultaneously presenting the exculpatory evidence in support of his theory of defense; (9) counsel was ineffective for failing to object to Government counsel's reference to facts not supported by the evidence in the record during closing arguments; (10) counsel on direct appeal was ineffective for failing to challenge the sufficiency of the evidence; (11) counsel was ineffective for failing to challenge the Government's constructive amendment of the Petitioner's indictment; and (12) counsel was ineffective for failing to submit evidence favorable to the Petitioner's theory of defense.

## II. PROCEDURAL HISTORY AND BACKGROUND

### A. Motion to suppress

On January 10, 2012, the Petitioner was charged with possession with intent to distribute 280 grams of crack cocaine after police officers conducted two controlled buys from him (using a confidential source) and executed a search warrant at his house.

In a motion to suppress filed prior to trial, the Petitioner claimed that the Government's confidential source, Andrew Wallace, had sworn out an affidavit and recorded a video saying he had lied about receiving drugs from the Petitioner during the controlled buys prior to his arrest.

United States Magistrate Judge Byron G. Cudmore conducted a *Franks* hearing. The lead DEA agent, Springfield Detective Tom Bonnett, testified the DEA had been paying Andrew Wallace for his services as a confidential informant. Bonnett testified that, after the Petitioner was indicted, Andrew Wallace became concerned for his safety because he had been receiving threats. Judge Cudmore overruled the Petitioner's hearsay objection and allowed counsel for the Government to continue questioning Detective Bonnett about Andrew Wallace's concerns for his safety.

Detective Bonnett further testified that, because of Andrew Wallace's safety concerns, the DEA provided him with $5,000 to leave Springfield. Upon learning he was in St. Louis, Bonnett advised Wallace by phone that he intended to serve him with a subpoena to appear at the suppression hearing. Andrew Wallace hung up the phone when Bonnet mentioned the subpoena. Bonnett attempted to call back several times but Wallace did not answer.

On June 18, 2012, the magistrate judge issued a Report and Recommendation. In discussing Andrew Wallace's absence from the hearing, the Court noted:

> The CS did not appear at the hearing, although both parties attempted to secure the CS's voluntary attendance. The Court held a status conference on June 11, 2012, during which the Court discussed the possibility of either party requesting a material witness warrant, but neither party requested such a warrant.

Case No. 12-cr-30003, Doc. No. 30, at 2.  In the Report and Recommendation, Judge Cudmore determined that the "evidence introduced at the hearing actually negated [Andrew Wallace's] retraction" and found that Wallace's affidavit lacked credibility.

The magistrate judge recommended that the motion to suppress be denied.  On August 28, 2012, this Court adopted the Report and Recommendation and denied the motion to suppress.

B. <u>Motions in limine</u>

Prior to trial, both parties filed several motions in limine regarding the use of evidence generated by Andrew Wallace.  On September 17, 2012, the Petitioner filed a motion in limine regarding the admissibility of the videotape of Andrew Wallace, wherein he recanted statements he made to the Government during its initial investigation and claimed the Petitioner did not sell drugs to him on December 15, 2011.

At a pretrial hearing three days later, Mr. Alvarez—in the context of providing this Court background about a disagreement he was having with the Petitioner—told the Court that Andrew Wallace was under the control of the defense and not being truthful:

> I never indicated that . . . we wouldn't address the issues in the videotape during trial, only that to ask to have the videotape introduced without offering the witness, who is under our control, despite being the confidential source in this matter, doesn't make sense.

The confidential source, if he indicated what Mr. Wallace has indicated to him, is misrepresenting the facts to Mr. Wallace. I've had one conversation with Andrew Wallace, who is the individual we're talking about. He was suppose to come to my office. He never did.

He had delivered a handwritten statement. He then asked me to meet him at some location in either East St. Louis or St. Louis and discuss the case with him. I said I wasn't going to do that. I asked him to come to my office. And I said at that point in time I would take a taped statement that I did have to disclose to the prosecution.

That's not what he represented to Mr. Wallace. He represented to Mr. Wallace that . . . I was refusing to take a video statement from him or a taped statement and refusing to see him. [T]hat's not true.

As to hiring an investigator to go down there and talk to him; neither does that make sense since we have a witness that Mr. Patrick Wallace has been in contact with, and other members of his family. And obviously by providing to the defense, and his sworn statement, written statement in the past, is cooperating with us. . . .

I've asked that he contact me. He never has. One time I did attempt to contact him, he was in a restaurant, he was eating. When I identified myself, he started to mumble, then he hung up. And that's the last direct contact I've attempted to have with that gentleman.

Doc. 130, 13-15.[2]

On September 26, 2012, this Court ruled that the videotape was inadmissible as hearsay and did not fall under any of the hearsay exceptions listed in Federal Rule of Evidence 803.

---

[2] Unless otherwise indicated, any quoted portions from transcripts will be from *United States v. Patrick B. Wallace*, Case No. 12-cr-30003.

The parties filed motions in limine which pertained to calling Andrew Wallace as a witness and whether the Government would be permitted to play and reference the video and audio recording made by Wallace during the controlled buys. The Court (1) ruled that Petitioner was prohibited from referring during opening statements to any anticipated testimony from Andrew Wallace; (2) reserved ruling (until the close of the Government's case) on the Government's motion to preclude the Petitioner from calling Andrew Wallace as a witness; (3) denied as moot the Petitioner's motion to exclude the audio and video recordings of the drug buys made by Andrew Wallace as well as Petitioner's motion to preclude the Government's witnesses from testifying about out-of-court statements made by Andrew Wallace, after the Government stated it would not admit any of Andrew Wallace's out-of-court statements, but would merely play a portion of the video recording without the accompanying audio.

In an Order entered on October 10, 2012, the Court specifically found that Andrew Wallace was not under the control of either party.

C. <u>Trial</u>

On October 16, 2012, after a four-day trial, the jury found the Petitioner guilty. The Government's evidence at trial consisted of law enforcement witnesses who testified about the controlled dug purchases and the execution of the search warrant, in addition to various exhibits which included a portion of the silent video.

The evidence showed that on December 15, 2011, police investigators used Andrew Wallace to make a controlled purchase of crack cocaine from his uncle, Petitioner Patrick Wallace, out of a residence located at 700 North 14th Street in Springfield, Illinois.

Officers met with Andrew Wallace that morning and provided him with $1,250 of pre-recorded Official Advance Funds. The officers searched Andrew Wallace and placed an audio/video recorder on his body.

Officers searched Andrew Wallace's car and maintained surveillance of it as he drove directly to the Petitioner's residence, where officers had set up perimeter surveillance around the house. Officers including Detective Bonnett also positioned themselves outside of the house in order to monitor the audio portion of the recording.

Officers observed Andrew Wallace enter the house and exit about 20 minutes later. They followed him back to their office where they searched him again. Andrew Wallace turned over the 22 grams of crack cocaine he had just purchased. He no longer possessed the pre-recorded funds. Officers sought and obtained a search warrant for the residence at 700 North 14th Street.

Prior to executing the search warrant, the officers arranged for Andrew Wallace to conduct another controlled purchase of crack cocaine to ensure that there were still drugs in the house.

At around 8:30 p.m. on December 15, officers met with Andrew Wallace at the DEA Office. They searched his car, placed the same audio/video recording device on his body and provided him with $1,250 of pre-recorded Official Advance Funds.

Officers used the same protocol they used earlier in setting up surveillance of the residence.

Detective Bonnett monitored the audio recording from outside of the house. He recognized Andrew Wallace's voice and the Petitioner's voice as they were speaking. Bonnett had spoken with the Petitioner in the past.

Andrew Wallace again exited the residence about 20 minutes after arriving. Officers followed him back to the DEA office, searched him, found crack cocaine and found none of the pre-recorded funds.

Upon reviewing the recording, Detective Bonnett was able to identify by sight Andrew Wallace and the Petitioner, in addition to Jerome Wallace, whom he believed to be the Petitioner's nephew.

At trial, over the Defendant's objection, the Government played part of the video recording of the second controlled buy. Mr. Alvarez stated the Defense had no objection as long as only the video portion played.

Detective Bonnett identified the three men shown in the video and stated the video does not show anyone else entering the home. Jerome Wallace and the

Petitioner were standing close to the microwave in the kitchen. He also testified the video showed the Petitioner just prior to what appears to be Andrew Wallace receiving crack cocaine.

The Government introduced several still photos taken from the video. Bonnett testified the photos depict the Petitioner standing in the kitchen next to a microwave containing a measuring cup with an off-white substance in it, a food sealer, and what appears to be cocaine in bags. Bonnett testified one of the photographs depicts Wallace looking at the microwave while it is lit up with a green light.

The officers executed the search warrant approximately an hour after the second controlled buy was completed. When the Springfield SWAT team entered the house, they found the Petitioner in the only bathroom shaving his head. Upon seeing the officers, the Petitioner ran in to an adjacent room. The officers apprehended the Petitioner and secured him in the front room, along with two other individuals: Jerome Wallace and Sandy Johnson. Officers searched every room in the house.

The officers discovered an active security surveillance system in and outside of the house. In the southwest bedroom, officers found a 20-inch surveillance monitor displaying the outside of the house, a surveillance clock with a mini camera inside and an activated DVR recorder in a closet, which was recording the security

camera footage. In the kitchen, officers found cabling, a monitor and a remote control. In the living room, a 73-inch television was showing the surveillance of the outside of the house.

On the front door of the southwest bedroom, officers observed a sign that said "No matter what, always knock before you enter this room. Wait on a come in. Thanks, P.J." Doc. No. 133, at 268.

On the bed in the southwest bedroom, officers found a pair of jeans containing a wallet. The wallet contained identification for the Petitioner and his mother. In one of the jeans' pockets, the officers found marijuana and crack cocaine.

The jeans also contained $160 of the pre-recorded funds—one bill from the first controlled buy and six bills from the second buy.

In the same bedroom, officers found a second wallet in a plastic filing cabinet. That wallet also contained identification documents for the Petitioner: one with the North 14th Street address and one with an address of 150 South Durkin Drive in Springfield. The officers also located mail addressed to the Petitioner.

In the filing cabinet, officers found $980 of their pre-recorded funds from the second buy. The filing cabinet also contained more than a pound of crack and powder cocaine as well as marijuana. Throughout the house, the officers found a total of 697 grams of cocaine and crack cocaine, worth approximately $70,000. Officers also located watches and DVDs in the cabinet.

Inside the closet of the bedroom, officers found more than 20 pairs of shoes and several items of men's clothing sized to fit a large man. In the same bedroom, officers also located two cell phones, four laptop computers, an empty Smith and Wesson gun case, handgun holsters hanging on the back of the bathroom door, and a total of $5,430 in cash.

In the kitchen area, officers observed and photographed a note on the refrigerator door which said, "To people that don't buy food or soda, don't touch anything without asking. P.J." There was a photograph on the refrigerator door which depicted the Petitioner and two women.

In the back bedroom, officers found Jerome Wallace's prescription medications and driver's license and a lanyard with cards containing his name. Officers also found a digital scale, a loaded .380 handgun inside of a clothes hamper, a box containing .380 caliber ammunition, an additional magazine for the handgun and a .45 caliber round for a different type of handgun.

The Petitioner made admissions to the officer at the scene. When Detective Bonnett began testifying about the statements, Mr. Alvarez for the first time moved to suppress the statements. The Court permitted Government counsel to voir dire Bonnett, who testified that Officer Mazrim, the officer who secured the suspects, advised him at the scene that he overheard Petitioner say to Sandy Johnson "not to worry about it" because everything in the bedroom was his. In response, Detective

Bonnett approached the Petitioner and asked him to come and talk with him. Wallace said, "I don't want to waste your time; everything in there's mine." Doc. No. 133, at 364.

Following Bonnett's testimony outside the jury's presence, Mr. Alvarez stated "That was my understanding as to how the evidence was going to come out, Your Honor. But I still, for the record, have made the same objection." *Id*. at 367. When the Court noted that objection was "a little late," Mr. Alvarez responded that he attempted to raise the issue prior to trial, but the Petitioner did not cooperate in the filing of the motion.

The prosecutor clarified by stating that although Mr. Alvarez wanted to file a motion to suppress, the Petitioner directed him against it because he took the position that he never made the statements. Mr. Alvarez verified that counsel's statements were accurate.

The district court asked that the prosecutor have the other two officers who witnessed the statements testify first thing in the morning.

The Parties and Court agreed that the Court would receive evidence (outside the presence of the jury) in the form of the testimony of the officers who observed the Petitioner make the statements at the scene and to rule on the Petitioner's objection outside the presence of the jury.

The next morning, Officer Mazrim testified that, while guarding the three individuals at the scene, the Petitioner twice told Sandy Johnson that everything in the bedroom was his. Officer Mazrim and Officer John Weiss, who was also guarding the three occupants in the living room, heard Bonnett ask the Petitioner to step out of the room and talk to him. Officers Mazrim and Weiss stated that Wallace responded, "I don't want to waste your time, everything in that room is mine." Doc. No. 134, at 398, 410. Detective Bonnett asked the Petitioner no further questions.

The Court denied the motion, finding that Petitioner's statements were non-custodial and voluntary. Detective Bonnett testified before the jury in a manner consistent with his previous testimony outside their presence. Officers Mazrim and Weiss also testified consistently with their earlier testimony.

At the conclusion of the Government's case, the Court again raised the issue of whether the Government should be required to call Andrew Wallace:

> I note that in a lengthy footnote in my previous order I found that the confidential source is not under the control of either party. In light of the way the Government has presented its case, and as indicated by the written order, I conclude that the Defendant, Mr. Wallace, does not have a right under the confrontation clause of the 6th Amendment to have the Government call the confidential source to testify.
>
> Now, we've thoroughly reviewed the case law cited by both parties. And I conclude that the defendant has the right to call the CS, the confidential source, as a witness. However, if the Defendant Wallace does call the confidential source, I will grant the Government's request to conduct voir dire outside the presence of the jury before he be allowed to testify before the jury.

Doc. No. 126, at 757.

Mr. Alvarez informed the Court that Petitioner's family members had been in contact with Andrew Wallace and that he intended to show up at the trial the next day. The Petitioner wanted to call him as a witness. Counsel stated he had no idea what Andrew Wallace might say and strongly disagreed with the decision to call him:

> [D]uring the recess . . . I was confronted by . . . Andrew Wallace's sister, who advised that Mr. Andrew Wallace desires to testify. He's in the state of Minnesota at this point in time, but . . . has advised her that he has consulted counsel in Minnesota, understands what ramifications he may suffer as a result of his testimony, but he desires to testify and would be willing to be here in the morning.
>
> I have not spoken to him to be able to confirm that, or what he would testify to. I have discussed it with my client and as we have on other occasions, we have a differing opinion as to whether he should be called.
>
> I've advised him that I do not believe that based upon my interpretation of matters and the evidence as I view it, that it would be in my client's best interest to call Andrew Wallace as a witness. And we had a vigorous discussion regarding the same in the cell before we readjourned. And he has insisted that . . . he wants Mr. Andrew Wallace to testify.
>
> I understand I make decisions about how to proceed. I have done so throughout the trial thus far. He's disagreed on some of things that I've allowed in or . . . inquiries I've made. But it's his . . . cab ride, so to speak, Judge. And he's insisting that Mr. Andrew Wallace be called as a witness.
>
> However, I've cautioned him that I may - - depending on my ability to communicate with him this evening, I may, again, strongly disagree with him.
>
> So it's my understanding that he will be here tomorrow. . . I have not had

a chance to voir dire him.  I don't know what mental state or what . . . he's ultimately going to testify to.  And that's what I've cautioned my client about.

*Id*. at 758-59.

The next morning, Mr. Alvarez updated the Court regarding his communication with Andrew Wallace:

Yesterday evening I also spoke three times . . . with Andrew Wallace.

He advised me that he was prepared to testify.  He indicated that he was in Minneapolis . . . and that he was going to be here today. . . [T]o be frank, he kept asking me questions about legal implications of his testifying. . . .  I said look, you indicated to me earlier you had spoken to an attorney.  I believe you need to discuss that issue with him, because your testimony could have some persuasion upon the government to take certain action against you.

But in either event, the last word I had from him, which was close to 9:00 yesterday evening . . . he was going to be here this morning.

But I don't have anything further than that.  He's not here that I've seen out in the hallway at all, Judge.

Doc. No. 132, at 808-09.

Counsel called three witnesses to testify for the Defense and informed the Court, "I haven't made a decision on Andrew Wallace, but nor have I seen him.  So unless he is lurking around the courthouse someplace, I don't know if we'll be calling him."  *Id*. at 880.  The Defense called one more witness and then rested.

The Petitioner was convicted on October 16, 2012.  On January 3, 2013, the Petitioner filed a motion for a new trial, which was denied the same day.

D. Relationship between Petitioner and Counsel

(1)

On two occasions before trial and once after it, the Petitioner sought to replace Mr. Alvarez.

On May 2, 2012, the Petitioner wrote a letter to the Clerk wherein he stated he wanted a new lawyer because Mr. Alvarez had not yet met with him to discuss the case. At a hearing twelve days later, the Petitioner withdrew his request.

On September 14, 2012, the Petitioner filed a motion asking the Court to remove Mr. Alvarez. In the motion, the Petitioner claimed that he and Mr. Alvarez had disagreements and counsel was not ethically and actively defending him. At the final pretrial conference on September 20, 2012, the Court asked the Petitioner to elaborate on his request. The Petitioner responded:

> [M]e and my attorney haven't agreed on a lot of issues that I see in the case that I asked him to file for me and things that I point out to him. We have a difference of agreement on those issues. And I asked him to - - these issues goes towards my innocence. And he refused to do those things. And it kind of upsets me, the fact that my attorney will not proceed in looking at issues that I would like for him to do.

Doc. No. 130, at 4. Mr. Alvarez responded that he did not know which issues the Petitioner was referencing except that Petitioner had asked him to file a motion asking the Court to allow Andrew Wallace's videotaped statement. Counsel explained that he filed the motion as requested, even though he noted that Andrew Wallace's videotaped statement would constitute hearsay. Mr. Alvarez stated that

he also wanted to file a motion to suppress the Petitioner's statements at the scene. The Petitioner instructed him not to file the motion.

Mr. Alvarez stated that he had discussed with the Petitioner the nature of the attorney-client relationship:

> I also advised Mr. Wallace that the training and experience has taught me that I'm not gonna sit and just simply nod my head up and down at everything he says. I'm going to assert my positions and opinions regarding this case and what I feel is in his best interest. It's his case and ultimately . . . with some tweaks here and there, we're going to proceed . . . the way he wants to proceed as far as a defense in this matter.

Doc. No. 130, at 6-7. The Petitioner then listed a number of specific complaints about Mr. Alvarez's representation, including: (1) counsel had failed to obtain an investigator to travel to interview the confidential source; (2) his attorney failed to ask the district court to provide an independent fingerprint expert and chemist; and (3) his attorney failed to provide him with the police records in the case but instead showed him the documents on an I-Pad.

Mr. Alvarez responded that he had downloaded the discovery documents onto an I-Pad, which he brought to all meetings with the Petitioner so that he could show the documents to him. He also stated he was in the process of preparing the motions asking for an independent fingerprint expert and chemist. Counsel explained:

> [M]y position . . . is that . . . the duties I'm sworn to uphold indicate to me that I have to advise him as to what is appropriate defense and what may or may not work in this case, He may not like it, but as I've told him repeatedly I'm going to assert those defenses, or I'm going to make my point with him,

> I'm not simply going to agree to everything he says because . . . some of the ways he's asking me to proceed, don't make sense. Particularly on the motion to suppress on the videotape.

Doc. No. 130, at 13. Mr. Alvarez also explained that it made no sense to have an investigator go to St. Louis to interview Andrew Wallace when Wallace had been in contact with the Petitioner and members of his family.

The Court denied the Petitioner's motion, stating as follows:

> I have two observations.
>
> Number one, Mr. Wallace, I have known Mr. Alvarez for a good many years. I've been on this bench for 26 and I knew him back when I was on the state court. And he's appeared before me many, many times. And he's always done a superlative job. And I've always been impressed with his preparation and his abilities in the courtroom.
> So from that standpoint, I want you to know that you've got very good counsel at your table with you.
>
> Number two, it seems to me that he's already filed a motion that you wanted to bring up regarding the video. And so, this would seem to me to take much of the teeth out of your motion.
>
> But the bottom line is that some things have to give way to the shortness of life. And this is one of them. Your motion is denied.

### (2)

The Petitioner filed a third motion following the trial requesting new counsel for his sentencing hearing. In addition to reiterating his previous complaints, the Petitioner stated that counsel: (1) failed to introduce evidence of tape-recorded telephone calls between the Petitioner and Andrew Wallace; (2) failed to make numerous objections at trial; (3) failed to investigate the case, present any defense

or make strategic decisions on behalf of the Petitioner; (4) deliberately withheld evidence from Petitioner; (5) provided the Petitioner with an illegible and incomplete copy of one of the Government's motions in limine; (6) failed to review all of the discovery with the Petitioner; and (7) failed to confront the witnesses against the Petitioner.

After hearing from the Petitioner and Mr. Alvarez, the Court denied the motion. The Court stated:

> Well, after carefully considering the written materials and the statements that are made here today, the Court does deny the defendant's pro se motion to appoint a new attorney.
>
> Mr. Wallace, the Court concludes that Mr. Alvarez has performed his duties in a most effective manner; especially considering the hand he was dealt.
>
> You confessed to law enforcement . . . that all of the contraband in the bedroom was yours. And there was video evidence of the second controlled purchase that corroborated the allegations.
>
> Quite frankly, Mr. Alvarez has done a very good job. And this is a personal observation. I have known Mr. Alvarez for 35 years. He has practiced before me on more than this court. And I know his career and I have seen him in action upon numerous occasions over that period of time. And I think, quite frankly, he did a very good job.
>
> Many of the claims made by the defendant here relate to strategic decisions that are the province of the attorney. . . . The Court sees no reason to make a change at this point in the proceedings. The defendant's arguments are unpersuasive.
>
> Indigent defendants have a right to effective assistance of counsel, of course, but that does not mean that they get to choose who that counsel will be. Or that they can dismiss the appointed attorney whenever they see fit.

Doc. No. 135, at 23-24.

E. <u>Defendant's other pro se post-trial motions and sentencing</u>

On January 3, 2013, the Petitioner filed a *pro se* motion for a new trial. Subsequently, he filed a motion for a *Giglio* hearing; motion for evidentiary hearing due to prosecutorial misconduct; motion for an in camera hearing; and motion to reopen the proof of the affidavit of Detective Tom Bonnett. In its response, the Government contended that these motions should be construed as motions for new trial and the motions were untimely under Federal Rule of Criminal Procedure 33. The Court denied each of the motions.

In denying the Petitioner's motion for evidentiary hearing due to alleged prosecutorial misconduct for failing to disclose a published opinion in *United States v. Whitley*, 249 F.3d 614 (7th Cir. 2001), the Court held that the Government did not commit a *Brady* violation because the *Whitley* opinion was a published opinion that was available to Wallace. Accordingly, the Government had no duty to disclose the public document. The Court further noted that, because the evidence against the Petitioner was "overwhelming," there was no reasonable probability that the result of the trial would have been different if the *Whitley* decision had been available to the defense.

On May 24, 2013, the Court sentenced the Petitioner to a term of 288 months imprisonment to be followed by ten years of supervised release. In the revocation

proceeding held the same day, the Court sentenced the Petitioner to a consecutive 60-month sentence for committing a crime while on supervised release.

F. Direct appeal

On direct appeal, the United States Court of Appeals for the Seventh Circuit affirmed the Petitioner's conviction and sentence, noting the "overwhelming evidence of the defendant's guilt." *United States v. Wallace*, 753 F.3d 671, 675 (7th Cir. 2014). The Seventh Circuit rejected the Petitioner's claim that the Court erred in denying his motion to appoint counsel absent a showing of ineffective assistance of counsel. *Id.* at 675-76. The court declined to address any ineffective assistance claim, allowing the Petitioner an opportunity to advance it in a § 2255 motion and stating that perhaps "new counsel" might "present convincing evidence" in support of an ineffective assistance claim. *Id.* at 676.

G. Evidentiary hearing on § 2255 motion

On June 21, 2017, the Court conducted an evidentiary hearing on the Petitioner's motion. The Petitioner was represented by retained counsel. The Petitioner did not present any testimony from any of the persons who allegedly completed affidavits that were attached to his motion and did not seek to present the testimony of, or any material witness warrant for, Andrew Wallace. The Petitioner presented only the testimony of his trial counsel, Mr. Alvarez, and his own testimony.

Mr. Alvarez testified consistently with the statements he made to the Court during the hearings throughout the underlying criminal case. The Petitioner denied and disputed all of the evidence that the Government presented during trial. Upon reviewing the entire record in this case, the Court finds that Mr. Alvarez's testimony was credible and that Patrick B. Wallace's testimony was not credible.

## III. DISCUSSION

### A. Legal standard

A motion under § 2255 to vacate, set aside or correct a sentence may be brought by a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. A motion under § 2255 is not a substitute for a direct appeal. *See United States v. Barger*, 178 F.3d 844, 848 (7th Cir. 1999). "For constitutional challenges to a conviction to be properly brought under a § 2255 proceeding, a defendant must make a showing of good cause for, and prejudice from, the failure to raise the issues on direct appeal." *Id*.

"[T]o prove ineffective assistance of counsel, [a petitioner] must show that his attorney's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kirklin v. United States*, 883

F.3d 993, 996 (7th Cir. 2018) (internal quotation marks omitted). The presumption is that counsel advised his client effectively. *See Hutchings v. United States*, 618 F.3d 693, 696-97 (7th Cir. 2010). "Only if the petitioner comes forward with specific acts or omissions of his counsel that constitute ineffective assistance will we then consider whether these acts or omissions were made outside the wide range of professionally competent assistance." *Id*. at 697 (internal quotation marks omitted).

To prove ineffective assistance of appellate counsel, a petitioner must show that counsel failed "to argue an issue that is both obvious and clearly stronger than the issues raised." *Martin v. Evans*, 384 F.3d 848, 851 (7th Cir. 2004). However, counsel need not "raise every non-frivolous issue on appeal." *Id*. at 852. A petitioner must show that prejudice resulted, meaning that "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010).

B. Analysis

The Petitioner's § 2255 motion includes twelve grounds for relief. As noted, an evidentiary hearing was held at which he presented the testimony of Mr. Alvarez, in addition to his own testimony. Following the evidentiary hearing, the Petitioner terminated his retained counsel, Dallas Craig Hughes. The Petitioner filed a post-

trial brief.  The Government filed a response.  The Petitioner filed a reply to the response.

(1) Ground 1

The Petitioner contends the Court erred in denying his motion for a new trial because of its denial of his motions to appoint new counsel.  On multiple occasions when the Petitioner sought new counsel, the Court allowed the Petitioner and Mr. Alvarez to address the Court regarding any problems with the attorney-client relationship.  This demonstrated that though at times they vigorously debated how to present the case, the parties did not have a total breakdown in communication. The Petitioner wanted Mr. Alvarez to introduce certain evidence that counsel did not believe should be presented.  However, "differences in strategy do not constitute grounds for new counsel."  *United States v. Van Waeyenberghe*, 481 F.3d 951, 960 (7th Cir. 2007).

The Seventh Circuit previously rejected the Petitioner's argument as a claim separate from a claim of ineffective assistance of counsel, which it allowed the Petitioner to preserve for advancement in this § 2255 proceeding.  "[I]f a defendant is still afforded adequate representation, an erroneous denial of a motion for substitution is not prejudicial and is therefore harmless."  *Wallace*, 753 F.3d at 675. For the reasons that follow, the Court concludes that the Petitioner has not established that he received ineffective assistance of counsel.  Accordingly, the

Petitioner's complaints about the Court's denial of his motions to substitute counsel are meritless.

## (2) Grounds 6 and 10

In Ground 6, the Petitioner alleges counsel was ineffective for failing to raise his *Brady* claim on direct appeal. This claim is without merit. In ruling on the Petitioner's *pro se* post-trial motions, the Court determined that Petitioner's motion for new trial based on prosecutorial misconduct for failure to disclose was untimely. The Court also concluded there was no *Brady* violation in failing to disclose a published opinion, *United States v. Whitley*, 249 F.3d 614 (7th Cir. 2001), which was already available to the defense. Because there is no *Brady* violation for failing to disclose a matter of public record, the Petitioner's sixth ground is without merit.

In Ground 10, the Petitioner claims counsel on direct appeal was ineffective for failing to challenge the sufficiency of the evidence. This claim is preposterous. This Court and the Seventh Circuit concluded that the evidence against the Petitioner was "overwhelming." *Wallace*, 753 F.3d at 675. The evidence included controlled purchases of cocaine from the Petitioner, drugs and buy money in his bedroom and the Petitioner's multiple confessions that everything in the bedroom belonged to him. Challenges to the sufficiency of the evidence rarely succeed. Such a challenge by appellate counsel would have been pointless.

Appellate counsel was not ineffective in failing to challenge the denial of the Petitioner's untimely and meritless *Brady* claim. Moreover, there is no probability, certainly not a reasonable one, that the outcome of the appeal would have been different if counsel would have raised a sufficiency of the evidence claim. Accordingly, in the ineffective assistance of appellate counsel claims in Grounds 6 and 10 are without merit.

### (3) Ground 7

In Ground 7, the Petitioner alleges counsel was ineffective for failing to file a motion under the Jencks Act, 18 U.S.C. § 3500, at the conclusion of the Government witness's testimony. The Jencks Act pertains to the production of statements and reports of witnesses. The Petitioner claims that counsel was ineffective for failing to request the notes of Detective Bonnett and other police officers or case agents. In his supplemental memorandum, the Petitioner claims that he presented a photograph at the evidentiary hearing which depicted a law enforcement agent "taking handwritten notes" of items seized during the execution of a search warrant.

It is no surprise that agents documented their actions in executing the search warrant. However, no evidence has been presented in support of the claim that the Government failed to provide to Petitioner's counsel required statements of a trial witness, including any agent reports or inventory documents authored by that witness, as required by the Act. Moreover, even if the Government failed to provide

such statements or reports, the Court concludes that would not support an ineffective assistance of counsel claim, given that such failure would have had no impact on the trial.

### (4) Grounds 2 and 3

In Ground 2, the Petitioner alleges counsel was ineffective for failing to hold the Government to its burden to make a reasonable effort to locate the confidential informant, thereby violating his right to a complete defense. In Ground 3, the Petitioner asserts counsel was ineffective for failing to request a material witness warrant to compel the confidential informant's attendance and testimony at trial.

As the Court noted earlier in reciting the factual and procedural background, the record establishes that Mr. Alvarez asked Petitioner's nephew Andrew Wallace to contact him. Andrew Wallace did not do so. When Mr. Alvarez eventually telephoned Andrew Wallace and identified himself as Petitioner's attorney, Andrew Wallace hung up. During the trial, the Petitioner's family was in contact with Andrew Wallace, who represented he would testify for the Petitioner. The morning he was to be called as a witness, Mr. Alvarez represented to the Court that he had spoken with Andrew Wallace three times the night before. Andrew Wallace told Mr. Alvarez he was prepared to testify and would be present that morning. However, Andrew Wallace asked a number of questions about the legal implications of testifying and then did not show up.

While making significant efforts to locate Andrew Wallace, Mr. Alvarez maintained he had serious concerns about calling him as a witness because it was unclear what he would say. Counsel attempted to secure Andrew Wallace's appearance at trial while protecting his client's interests by continuously evaluating whether it would be prudent to call Andrew as a witness. The decision whether to call Andrew Wallace or not was a matter of trial strategy that counsel was entitled to make. "A lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). As the Court stated following the jury trial, "Mr. Alvarez has performed his duties in a most effective manner; especially considering the hand that he was dealt." Doc. No. 135, at 23.

Even if the Petitioner could show that counsel's performance was deficient, he could not establish prejudice. The Petitioner would be unable to show that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. The Seventh Circuit stated:

> Andrew, however, was such a loose cannon that the lawyer would have been taking a grave risk in dragging him into court against his will. Maybe in anger Andrew would have recanted his recantation. If not, he might well have disintegrated under cross-examination. He probably would not have been a credible witness.

*Wallace*, 753 F.3d 676. Andrew Wallace repeatedly changed his story, hung up on Mr. Alvarez when he identified himself and failed to show up on the Petitioner's

behalf as promised. It is highly unlikely that a jury would have believed that Andrew Wallace lied to Detective Bonnett about purchasing cocaine from the Petitioner. The Petitioner is unable to establish that counsel's failure to secure Andrew Wallace's appearance at trial affected the outcome.

The jury would have seen the video evidence of the second controlled purchase. Moreover, the circumstances of the controlled drug purchases between Andrew Wallace and the Petitioner were a very small part of the Government's evidence. The officers caught the Petitioner with the drugs and buy money in his bedroom—a bedroom he occupied when they entered his house to execute the search warrant. The jury heard from multiple witnesses that the Petitioner confessed that everything in the bedroom belonged to the Petitioner. It is highly likely that Andrew Wallace's testimony ultimately would have added to the already overwhelming evidence against the Petitioner.

Additionally, the Petitioner's failure (while represented by retained counsel) to seek a material witness warrant for, or present the testimony of, Andrew Wallace for the evidentiary hearing in this proceeding conclusively demonstrates that Petitioner's arguments relating to Andrew Wallace are completely without merit. The Seventh Circuit stated that "maybe in a section 2255 proceeding new counsel could present convincing evidence that the trial lawyer had made a grave mistake by

failing to seek such a warrant." *Wallace*, 753 F.3d at 676. The Petitioner has made no such showing.

(5) Other grounds

In Ground 4, the Petitioner alleges Mr. Alvarez was ineffective for failing to present the testimony of three more witnesses in support of his theory of defense. These witnesses include Jane Cooper and Patricia Wallace, who the Petitioner suggests would have testified that another individual committed the offense. The Petitioner also contends that Mr. Alvarez should have called Anthony Horton, who would have testified that the drugs in the pocket of the Petitioner's jeans were planted by the confidential informant.

In Ground 5, the Petitioner claims Mr. Alvarez was ineffective for failing to investigate and effectively cross examine and question various witnesses in support of his theory of defense. Specifically, he takes issue with counsel's questioning of Detective Bonnett, Special Agent Ambrozick, Officers Oldham, Haas and Green, Agent Mokhoff, Larry Wallace and Charissa Henderson.

As for Grounds 4 and 5, many of these claims are similar to claims that the Court rejected in denying the Petitioner's post-trial motions. The affidavits submitted by the Petitioner in support of these claims are self-serving and not credible, as demonstrated by the Petitioner's failure to actually present the testimony of any of these witnesses at the evidentiary hearing on the § 2255 motion.

The Petitioner claims Mr. Alvarez was ineffective for failing to effectively cross-examine Special Agent Mokhoff in relation to the file cabinet, where the drugs were discovered. At trial, Mokhoff testified on cross examination that he did not recall the file cabinet being locked. However, it was not open and it took some strength to open it. However the DEA Report, which is attached to the Petitioner's initial motion, describes the file cabinet as being "locked." The Court concludes that counsel's failure to question Mokhoff on this minor discrepancy was not unreasonable, nor could it have prejudiced the Petitioner. Regardless of whether the file cabinet was locked or not, there is overwhelming evidence that Petitioner exercised total control of the entire residence, particularly the bedroom where Petitioner was found during the execution of the search warrant. It strains credulity to suggest that the result of the trial would have been different if counsel had impeached Mokhoff concerning this minor detail.

The Petitioner also claims Mr. Alvarez was ineffective for failing to cross-examine Detective Bonnett about Sandy Johnson's statement. He alleges counsel should have elicited from Bonnett that Johnson admitted to him that she possessed the drugs found in the residence. The Petitioner claims the statement could have been admitted as a statement against interest under Federal Rule of Evidence 804(b)(3). Because the Petitioner has not presented anything to establish the trustworthiness of Johnson's statement as required under the rule, the Court

concludes it would not be admissible. Additionally, because of the overwhelming evidence against the Petitioner, including multiple confessions that everything in the bedroom was his, counsel's failure to introduce the statement did not affect the outcome of the trial.

Accordingly, there is no basis to conclude counsel acted unreasonably in not presenting certain witnesses or with respect to cross examining Government witnesses. The Court further finds that there is no reasonable probability that but for counsel's performance, the outcome of the trial would have been different.

In Ground 8, the Petitioner alleges counsel was ineffective for presenting inculpatory evidence without simultaneously presenting exculpatory evidence in support of his theory of the defense. The Petitioner claims the audio of the first controlled buy would have been exculpatory. He says that audio would reflect his statement "that he had no drugs."

The Court concludes that the Petitioner's claim is without merit. Mr. Alvarez explained during his closing argument that the purpose of playing the silent video was to show that Petitioner was not visible on the video, and that two other men could have been the persons from whom Andrew Wallace purchased the cocaine. This was a reasonable, tactical decision that an attorney is entitled to make. Additionally, the recorded statements would have constituted inadmissible hearsay if offered by the Petitioner. The Court further concludes that, even assuming Mr.

Alvarez should not have played the silent recording, the Government presented overwhelming evidence against the Petitioner. Accordingly, there is not a reasonable probability that the outcome of the trial would have been different.

In Ground 9, the Petitioner claims Mr. Alvarez was ineffective for failing to object to the prosecutor's reference to facts not supported by the evidence in the record during closing arguments. The Petitioner contends the prosecutor erroneously claimed that Petitioner's fingerprints were on one of the plastic bags containing drug residue that were found in the kitchen.

At one point in the Government's closing argument, the prosecutor stated:

> Proceed to the kitchen. . . . All the things you would expect to find not from a family home, but a crack house . . . A baggie with – a plastic bag inside with cocaine residue. And whose fingerprints are on it. The defendant's and Sandy Johnson's.

Doc. No. 132, at 962. The Petitioner contends that the Government improperly argued that his fingerprint was on the plastic bag with the residue rather than on the plastic bag that contained the plastic bag with the residue.

At trial, Officer Terry Day testified that during a search of the kitchen, he seized a Ziploc plastic bag that contained other baggies, baggie corners and a paper towel. DEA Forensic Examiner Ambrozich further testified that the outer Ziploc bag contained a fingerprint belonging to the Petitioner. Moreover, DEA Forensic Chemist Baer testified and the DEA report attached to the Petitioner's supplemental memorandum reflects that the baggies within the Ziploc bag contained cocaine

residue.  The Government states that, when counsel made reference to Petitioner's fingerprint "on it" during closing argument, the Government did not suggest, or intend to suggest, that "it" was the plastic bag containing cocaine residue that was inside the Ziploc bag.  The Government was referring to the outer Ziploc bag, as testified by Ambrozich.  When read in context, "it" could refer to either bag.  The prosecutor did not say that the Petitioner's fingerprints were on both bags.  Consequently, there was nothing improper or inaccurate about the prosecutor's closing argument.

The Court further finds that even if there is a risk that the jury misunderstood the Government's argument, there is no basis to conclude that trial counsel acted unreasonably in failing to object or that such failure prejudiced the Petitioner.  Once again, the evidence against him was overwhelming.  The Court instructed the jury that counsel's arguments are not evidence and that if counsel's arguments differ from the jury's recollection of the evidence, the jury should rely on its recollection and not on counsel's argument.  Defense counsel's failure to object to the statement did not affect the outcome of the trial.  If counsel had objected to the closing, at best for the Petitioner the Court would have sustained the objection on the basis it was not apparent to which Ziploc bag the statement referred and reminded the jury of its cautionary instruction.  Accordingly, the Petitioner's claim referring to the prosecutor's closing argument is without merit.

The Petitioner also contends that the Government improperly argued that the glass measuring cup that was introduced in evidence and depicted in a trial photograph contained cocaine residue because there was no laboratory analysis of the measuring cup. The Petitioner's claim is without merit.

It is not always necessary to present expert analysis and testimony to establish the identity of a controlled substance. *See United States v. Turner*, 709 F.3d 1187, 1195 (7th Cir. 2013). That may be proved by circumstantial evidence. *See id.*

Here, the Government presented ample evidence that the residue on the measuring cup was indeed cocaine residue. The Petitioner's testimony that he used the microwave to make "Similac milk" for his infant son is simply not credible and plainly false. The Government's assertion that the glass measuring cup contained cocaine residue was an entirely reasonable inference from the evidence it had presented. Accordingly, the prosecutor was entitled to make that argument in closing.

In Ground 11, the Petitioner alleges counsel was ineffective for failing to challenge the Government's constructive amendment of the Petitioner's Indictment. He contends that although the Indictment charged possession with intent to distribute 280 grams or more of crack cocaine, the Government sought to prove Petitioner actually distributed an undisclosed amount.

The Petitioner's claim is without merit. The evidence of the Petitioner's distribution of cocaine from the residence in which additional cocaine was seized and where the Petitioner was located constitutes direct evidence of the crime charged. The Court has no basis to conclude that such evidence was improper or that counsel should have sought to exclude it. Additionally, the jury was properly instructed on the law.

In Ground 12, the Petitioner claims counsel was ineffective for failing to submit evidence favorable to his theory of defense. The Petitioner claims counsel failed to submit a digital copy of the conversation the Petitioner had with the confidential informant while Petitioner was incarcerated at the county jail, in which the confidential informant can be heard admitting to the fact that he planted the drugs in the pocket of the jeans discovered in the home. The Petitioner claims this digital copy of the conversation is part of Exhibit 13. However, it appears that Exhibit 13 is a copy of the DVD of one of the controlled buys on December 15, 2011. In any event, the evidence against the Petitioner was overwhelming and there is not a reasonable probability the outcome of the trial would have been different if the recording had been played.

Additionally, the Petitioner's failure with retained counsel to seek a material witness warrant for, or present the testimony of, Andrew Wallace for the evidentiary hearing in this proceeding conclusively demonstrates that his claims have no merit.

Rather, the evidence demonstrated that the Petitioner had total dominion and control over what Supervisory Special DEA Agent Glenn Haas described as a "typical drug house." Doc. No. 126, at 713.

## IV.    CONCLUSION

None of the Petitioner's grounds under § 2255 has merit. The Court held a hearing on the motion and found Mr. Alvarez's testimony was credible while the Petitioner's testimony was not credible. The evidence showed that Petitioner had dominion and control over a "typical drug house," where 697 grams of cocaine and crack cocaine were found. The Petitioner admitted it was all his. Given the overwhelming evidence of the Petitioner's guilt, there was only so much any attorney could do. Mr. Alvarez made reasonable strategic decisions throughout the trial. The Petitioner has not shown that trial counsel or appellate counsel was ineffective. His motion will be denied.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceeding, the Court must issue or deny a certificate of appealability. Upon reviewing the entire record, the Court concludes that the Petitioner has not made a substantial showing of the denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2). Accordingly, the Court will deny a certificate of appealability.

Ergo, the Motion of Petitioner Patrick B. Wallace to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [d/e 1] is DENIED.

The Motion of Petitioner Patrick B. Wallace to Appeal In Forma Pauperis [d/e 54] is DISMISSED as premature, as the Court had not ruled on Petitioner's Motion under § 2255 when he sought leave to appeal in forma pauperis.

The Petitioner may now seek leave to appeal in forma pauperis.

Because the Petitioner has not made a substantial showing of the denial of a constitutional right, the Court hereby denies Petitioner a certificate of appealability under Rule 11(a).

The Petitioner may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

ENTER: August 20, 2019

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge